UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| S.D.M. OF AMERICA | ) | |
| 711 4th Street, NW | ) | |
| Washington, DC 20001 | ) | |
|    Plaintiff, | ) | |
| | ) | Case No. 1:20-cv-2997 |
| v. | ) | |
| | ) | |
| CENTERRA, A CONSTELLIS COMPANY | ) | |
| 13530 Dulles Technology Drive, Suite 500 | ) | |
| Herndon, Virginia 20171 | ) | |
|    Defendant. | ) | |

## COMPLAINT TO COMPEL ARBITRATION

Plaintiff S.D.M. of America ("Union"), by its undersigned counsel, files this Complaint seeking to compel arbitration of a dispute between the Union and Defendant, Centerra, a Constellis Company ("Centerra" or "Company") in accordance with the terms of their collective bargaining agreement.

## NATURE OF ACTION

1.    The Union brings this action under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and the Federal Arbitration Act, 9 U.S.C. § 4.  The Union seeks to compel arbitration of an active dispute that Centerra violated the parties' valid collective bargaining agreement.

## PARTIES

2.    S.D.M. of America is a labor organization that was certified by the National Labor Relations Board on February 12, 2015, in Case No. 05-RC-126522, as the sole and exclusive representative for the purposes of collective bargaining with respect to rates of pay, wages, hours and other conditions of employment for all full-time and regular part-time Protective Service

1

Officers assigned to the Company's Department of Justice contract in the National Capital Region. The Union represents the Protective Service Officers that were employed by the Company under Centerra's federal contract to provide security guard services at the Department of Justice facilities throughout the District of Columbia until Centerra lost that government contract to Paragon Systems, Inc. ("Paragon") effective January 1, 2020.

3.      Centerra, a Delaware LLC with its headquarters located in Herndon, Virginia, provides security services on contract to federal government agencies including the Department of Justice and employed individuals represented by S.D.M. of America as security guards on the contract for the Department of Justice facilities throughout the District of Columbia until December 31, 2019.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331, Section 301 of the LMRA, 29 U.S.C. § 185, and the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

5.      Venue is proper pursuant 28 U.S.C. § 1391(b) because the events giving rise to this action are substantially connected to this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(c) based upon Centerra's substantial contacts with this District, including conducting business within this District.

**FACTS**

6.      The Union and Centerra have engaged in a collective bargaining relationship for four years.

7.      The Union and the Company signed a Collective Bargaining Agreement ("CBA" or "Agreement") effective from December 1, 2019 through September 30, 2020, that had been

2

negotiated by and between the parties and ratified by the Union's membership. A copy of the CBA is attached hereto as Exhibit A.

        8.      Article 11, Section 1 of the CBA states that employees shall accrue vacation leave for all hours worked in accordance with a schedule set forth in the Agreement. *See* Exhibit A at 25.

        9.      Article 11, Section 7 of the CBA states that upon leaving or termination a prorated percent of vacation leave for each month worked in the previous months back to their anniversary date shall be paid. *See* Exhibit A at 26.[1]

        10.     Article 13, Section 2 of the CBA states that all paid time off leave hours banked by each individual employee shall be paid out to them for any reason of separation, except for involuntary termination of employment due to disciplinary reason. *See* Exhibit A at 29.[2]

        11.     The CBA provides for a four-step grievance procedure as outlined in Article 6, Section 3:

> **Section 3:** All grievances shall be presented and processed in accordance with the following procedures with the exception of discipline involving suspension or

---

[1] Article 11, Section 7 of the CBA states the following (emphasis added):

> **Section 7:** Employees are strongly encouraged to use vacation earned to permit the rest and recreation it provides. In addition, employees may be paid for vacation in lieu of taking it, the amount paid out shall be cashed out after the employee's anniversary date, within one (1) pay period of any amount over the allowed carry over per year. The fact that employee's vacation is earned in the previous twelve (12) months; **upon leaving or termination a prorated percent (%) for each month worked in the previous months back to their anniversary date shall be paid**. When an employee submits an application for vacation the application will be processed and returned to the employee within the next work cycle (4-7 days).

[2] The relevant portion of Article 13, Section 2 of the CBA states the following (emphasis added):

> Unused PTO leave may be paid out at the end of the calendar year (the Company will put out a roll-call announcement prior to December 31st) as follows: Fifty percent (50%) of unused PTO earned in that calendar year may be paid out to the employee and the remainder carried over at the end of each calendar year. PTO can be accumulated to a maximum of 240 hours. **All PTO hours banked by each individual employee shall be paid out to them for any reason of separation, except involuntary termination of employment due to disciplinary reason(s)**.

termination, which shall begin at Step 2. The Union shall have the right to file a group grievance involving two (2) or more employees at Step 2 of the grievance procedure within ten (10) business days of the occurrence or having been made aware of the occurrence that serves as the basis for the grievance. The following steps comprise the grievance procedure:

a. **Step 1** – Any employee having a complaint, or an employee designated by a group of employees having a complaint, shall discuss the complaint with the appropriate supervisor. A Union representative may accompany the employee if the employee so desires. The supervisor shall answer the complaint in writing or orally within ten (10) business days.

b. **Step 2 –** If the grievance is not resolved at Step 1, the grievance shall be reduced to writing and presented to the Project Manager within ten (10) business days from the date on which the supervisor's answer to the Step 1 complaint was received. The written grievance shall be signed by the grieving employee, unless it is a group grievance and the signature of the filing Steward shall be accepted and shall set forth the nature of the grievance, including an appropriate justification for redress and the adjustment sought. The employee, the Union representative and the Project Manager (or his/her designee) shall meet to discuss the grievance. The Project Manager (or his/her designee) shall give a written decision to the grievant within ten (10) business days after the receipt of the grievance.

c. **Step 3 –** If the grievance is not resolved at Step 2, the Union must refer the grievance to the Employer's applicable Director of Operations (or his/her designee) within ten (10) business days after the completion of Step 2. The Director of Operations (or his/her designee other than a person who heard the grievance at Step 1 or 2) will meet with the grievant and the Union representative to discuss the grievance. The Director of Operations (or his/her designee other than a person who heard the grievance at Step 1 or 2) shall give a written decision to the union representative within ten (10) business days after receipt of the grievance.

d. **Step 4 –** Except as limited below, any grievance not resolved at Step 3 may be submitted to arbitration by the Union by submitting a written request to the other party within ten (10) business days after receipt of the Step 3 response. Service of a request for arbitration upon the Employer must be made to the Corporate Director of Labor Relations

Only the Union (i.e. no individual grievant) may move a grievance to Step 4.

Article 6, Section 3 of the CBA.  *See* Exhibit A at 11-12.

12.    The CBA provides for an arbitration procedure as outlined in Article 6, Section 4:

**Section 4:** Following a timely written request for submission to arbitration, the moving party shall have the responsibility for obtaining a seven (7) panel list of

potential Arbitrators. The panel list shall be chosen from the Federal Mediation and Conciliation Service (FMCS). Once received, the Employer and the Union shall meet and alternatively strike names from the panel until an Arbitrator has been selected. Either party shall have the one–time right to reject a panel. In the event a panel is rejected, the party rejecting the panel shall have the responsibility for obtaining a new panel. Furthermore:

**(a)** At the time of the arbitration hearing, both parties shall have the right to examine and cross-examine witnesses, present documents into evidence and a written record of the proceedings shall be made upon the request of either or both parties.

**(b)** Neither party may assert a contractual claim or basis in support of its position which was not presented during an earlier step of the Grievance Procedure.

**(c)** The arbitrator's fee and expenses, including the cost of any hearing room shall be borne solely by the losing party. The Employer, or Union, shall not pay the expenses and compensation of any witness or other participant. Any other expenses shall be borne by the party incurring such expenses. The party moving the matter to arbitration shall have the responsibility of proposing a neutral location for the matter to be heard. Once agreement is reached on the location, the same party shall have the responsibility for making the necessary reservation(s).

**(d)** The arbitrator shall have no power to: add to, subtract from, alter or in any way modify the terms of this Agreement; establish or modify any wage rate; construe this Agreement to limit Employer's discretion except only as that discretion may be specifically limited by the express terms of this Agreement; substitute his/her judgment for that of the Client regarding a determination or request of the Department of Justice, the contracting officer or other official of the Client. In the event that the arbitrator determines that the Client did not have just cause to remove an employee, the Union has the right to argue to the arbitrator that the Employer shall make the employee whole.

**(e)** The arbitrator shall render a decision within 60 days following the hearing. Decisions of the arbitrator, subject to the limitations set forth in this Agreement, shall be final and binding on the Union, its members, the employee or employees involved and on the Employer. Any award of backpay compensation shall be offset by all earned income received during the applicable period from comparable employment. Any award of reinstatement shall be subject to the Client permitting the employee to return to work. In the event that the Client will not allow a reinstated employee back to work at the Client's job location, the Employer will place that employee in a comparable position with the Employer.

Article 6, Section 4 of the CBA.  *See* Exhibit A at 13-14.

5

13.     On December 31, 2019, Centerra terminated and separated all employees from employment for reasons other than for disciplinary reasons as a result of the Company losing the government contract to provide security guard services at Department of Justice facilities to Paragon effective January 1, 2020.

14.     The employees – while employed by Centerra – had accrued, earned, and banked vacation leave and paid time off leave at the time they were terminated and separated from employment by the Company on December 31, 2019.

15.     Under the CBA, the Company was obligated to pay out to the terminated and separated bargaining unit members their accrued, earned, and banked vacation leave and paid time off leave.

16.     After the Company terminated and separated bargaining unit members on December 31, 2019, the Company failed and refused to pay them their accrued, earned, and banked vacation leave and paid time off leave as required under the terms of the CBA.

17.     On January 3, 2020, the president of the Union sent an email to the Director of Labor Relations for Centerra inquiring as to the status of the Company's payment to bargaining unit members of their accrued, earned, and banked vacation leave and paid time off leave.

18.     On January 8, 2020, Centerra's Director of Labor Relations asked the Union for a list of the names of bargaining unit members who did not receive their vacation leave pay out and stated that liability for the paid time off pay out was the responsibility of the successor employer, Paragon.

19.     On January 13, 2020, Centerra revised their response and stated that the successor employer, Paragon, assumed all vacation liability, and that the Company would not be making any pro-rated payments for vacation.

20.    The Union asked Paragon, on or about February 18, 2020 if it had assumed the vacation leave and paid time off payment obligations from Centerra, and Paragon communicated to the Union that Paragon did not assume any of Centerra's liability for payment of vacation leave and paid time off leave and that Paragon would not pay the accrued leave to former Centerra bargaining unit employees that Paragon retained under the successor contract.

21.    After Paragon refuted Centerra's claim that Paragon assumed the liability for the payment of accrued vacation leave and paid time off leave, the Union filed a Step 2 grievance in an email to Centerra on February 24, 2020.

22.    After Centerra failed to respond to the grievance, the Union sent an email to Centerra on March 31, 2020 notifying the Company that the Union was moving the grievance to Step 3 of the CBA's grievance procedure.

23.    On April 20, 2020, Centerra responded to the Union's grievance at Step 2 that Centerra did not have a CBA with the Union at the time the grievance was filed and that if Centerra did, the grievance was untimely.

24.    After Centerra finally responded to the Union's grievance at Step 2, the Union appealed the grievance to Step 3 of the CBA's grievance procedure on April 23, 2020 in a letter to the Company.

25.    The Company failed to respond to the Union's Step 3 grievance.

26.    Because of the Company's failure to respond to the Step 3 grievance, the Union submitted a written request for the grievance to be submitted to arbitration to the Company on May 19, 2020.

27.    In response to the Union's written request for arbitration, the Company responded on May 19, 2020, and said "the Company will not agree to submit this grievance to arbitration."

28.     To date, the Employer has refused to arbitrate the grievance as required by the terms of the CBA.

## CLAIM TO COMPEL ARBITRATION

29.     The allegations of paragraphs 1-28 are incorporated as if fully set forth herein.

30.     Centerra has breached its agreement with the Union by refusing to arbitrate the Union's grievance asserting that Centerra violated the parties' CBA concerning the payment of accrued, earned and banked vacation and paid time off leave upon employees' separation from employment.

31.     Pursuant to Section 301 of the LMRA, 29 U.S.C. §185 and Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, this Court has authority to compel Centerra to arbitrate its dispute with the Union over the Union's claims that Centerra failed to comply with Article 11, Section 7 and Article 13, Section 2 of the parties' CBA.

## PRAYER FOR RELIEF

Wherefore, S.D.M. of America respectfully requests that the Court enter an order as follows:

A.     Compelling Centerra to participate in the arbitration process set forth in the parties' collective bargaining agreement to adjudicate the Union's grievance; and

B.     Reimbursing the Union's costs and attorneys' fees for prosecuting this action; and

C.     Granting the Union all other appropriate relief that the Court deems just and appropriate.

Respectfully submitted,

Mooney, Green, Saindon, Murphy & Welch, P.C .,

By:     /s/ Peter J. Leff

Peter J. Leff, Bar No. 457476
Aaron S. Edelman, Bar No. 1048499
1920 L Street, N.W.
Suite 400
Washington, D.C. 20036
Tel.:  (202) 783-0010
Fax:  (202) 783-6088
pleff@mooneygreen.com


Counsel for S.D.M. of America