UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                      |                           |
|--------------------------------------|---------------------------|
| **S.D.M. OF AMERICA**,               |                           |
|     Plaintiff,   |                           |
| v.                                   | Case No. 20-cv-2997 (CRC) |
| **CENTERRA, A CONSTELLIS COMPANY**,  |                           |
|     Defendant.   |                           |

## MEMORANDUM OPINION

The main question in this case is whether an employer's rejection of a union grievance on timeliness grounds is a procedural issue to be decided by an arbitrator or a substantive matter to be decided by the Court. Finding the timeliness of the grievance to be procedural in nature, the Court will grant summary judgment for the union on its complaint to compel arbitration.

**I.   Background**

The following background is drawn from the complaint and associated materials unless otherwise indicated. The basic facts are not in dispute. Plaintiff S.D.M. of America ("S.D.M.") is a union that represents Protective Security Officers ("PSOs")—security guards employed by private contractors to staff federal buildings. Prior to 2020, defendant Centerra Group, LLC ("Centerra")[1] held the contract to provide PSOs to U.S. Department of Justice facilities in the Washington, D.C. area. Centerra thus employed PSOs represented by S.D.M. That employment relationship was governed by a Collective Bargaining Agreement ("CBA"). Various provisions

---

[1] The complaint names "Centerra, a Constellis Company" as the defendant. Centerra indicates, and S.D.M. does not contest, that the defendant's correct legal name is Centerra Group, LLC.

of the CBA covered the accrual of vacation time and other types of paid leave. Collective Bargaining Agreement ("CBA") at 25–26, 29 [Articles 11, 13], Compl. Ex. A.

Centerra lost the DOJ contract effective December 31, 2019. It therefore terminated the PSOs assigned to DOJ facilities as of that date. Following the termination, S.D.M. asked Centerra whether it planned to pay former bargaining unit members for their accrued paid leave. Centerra responded no, indicating that the new contract holder, Paragon, had assumed that liability. When S.D.M. contacted Paragon, however, it denied any obligation to pay accrued leave.

S.D.M. then initiated the CBA's grievance procedures. The CBA sets forth a series of steps the union must take before submitting a grievance to arbitration. CBA at 11–12 [Article 6]. At "Step 1," any employee with a complaint must discuss it with his or her supervisor, who is to respond within ten business days. Id. at 12. If the complaint is not resolved, the union must, at "Step 2," reduce the grievance to writing and present it to a Centerra project manager within ten business days of receiving the supervisor's response. Id. The project manager must issue a written decision within ten days. Id. If the grievance still is not resolved, the union must refer it to Centerra's Director of Operations "within ten [] business days after the completion of Step 2." Id. Only if the grievance remains unresolved after "Step 3" may the union, at "Step 4," submit it to arbitration. Id.

S.D.M. maintains that it presented Centerra with timely grievances at the second and third step of the process, and with a timely request to submit the grievance to arbitration at "Step 4" after Centerra failed to resolve it at each prior step. Pl.'s Stmt. Material Facts ("SMF") ¶¶ 18–23. Centerra responds that it did not submit the grievance to arbitration because, by its calculation, the union's "Step 2" grievance came more than ten days—42 to be exact—after

Centerra informed S.D.M. that it would not be making any accrued leave payments.  Def.'s Stmt. Material Facts ("SMF") ¶¶ 14–21.  The delay, Centerra says, rendered the grievance "null and void" under the terms of the CBA.  Id. ¶¶ 15, 17, 21.

S.D.M. thus filed this suit to compel arbitration of its grievance over accrued leave pay, and both sides have moved for summary judgment on the union's complaint.

**II. Analysis**

The duty to arbitrate "is a matter of contract."  Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 314–15 (2010) (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).  So, when presented with a motion to compel arbitration, the Court's task is to determine whether the relevant contract—the CBA in this case—requires arbitration of the grievance at issue.  "[A]n order to arbitrate [a] particular grievance should not be denied unless" the court can be certain the "arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  Granite Rock Co., 561 U.S at 314–15 (cleaned up) (quoting AT & T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 650 (1986)).  Any "[d]oubts should be resolved in favor of coverage."  Id.  Once a court finds that "the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."  John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557–58 (1964).

Applying these principles, there is no dispute that the CBA is binding on the parties.  And the "subject matter of [the] dispute," Livingston, 176 U.S. at 557–58,—the payment of accrued leave time—easily falls within the sweep of topics that are subject to arbitration under the CBA.  The CBA defines a grievance as "an alleged violation, misinterpretation, or misapplication of any provision of this Agreement."  CBA at 11 [Article 6, Section 1].  And the CBA contains

3

multiple provisions regarding the payment of accrued vacation time and other forms of paid leave. See CBA at 25–26, 29 [Articles 11, 13]. S.D.M.'s grievance that Centerra failed to pay bargaining unit members accrued leave time therefore involves "an alleged violation" of those CBA provisions. That means the union is entitled to arbitration of the grievance as set forth in the CBA, with procedural questions that "bear on its final disposition" reserved for the arbitrator. Livingston, 376 U.S. at 557–58.

Centerra does not dispute that the subject matter of the union's grievance is generally subject to arbitration under the CBA. It nonetheless seeks to sidestep arbitration by arguing that the deadlines in the CBA for presenting grievances at various steps are not procedural requirements, but rather serve to limit the union's "right to grieve or arbitrate" any grievance that might arise under the CBA. Def.'s Mot. Summ. J. at 3. This limitation, in Centerra's view, goes to the substantive scope of the matters the parties agreed to arbitrate. Def.'s Opp'n at 8–9.

Centerra's effort to recast the CBA's filing deadlines as a substantive limitation on what issues the parties agreed to arbitrate is foreclosed by both Supreme Court and D.C. Circuit precedent. In BG Group, PLC v. Republic of Argentina, the Supreme Court held that application of an investment treaty provision requiring the parties to bring any dispute in a local court before proceeding to arbitration was a "procedural precondition" for arbitration that presumptively should be decided by an arbitrator. 572 U.S. 25, 35 (2014). In reaching that conclusion, the Court grouped the local-litigation requirement with other "prerequisites such as *time limits*, notice, laches, estoppel and other conditions precedent to an obligation to arbitrate." Id. at 35 (cleaned up) (emphasis added). Such provisions, the Court explained, "determine[] *when* the contractual duty to arbitrate arises, not *whether* there is a contractual duty to arbitrate at all." Id. (emphasis in original); see also Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 (2002)

(whether a party filed a notice of arbitration within the applicable deadlines "is a matter presumptively for the arbitrator, not for the judge").

  D.C. Circuit precedent is equally clear.  In Washington Hospital Center, the Circuit found that whether a union had properly satisfied certain procedural preconditions for arbitration, including by not giving notice within 20 days following the completion of one step of the contractual grievance process, was a matter for an arbitrator to decide.  Washington Hosp. Ctr. v. Serv. Emps. Int'l Union Loc. 722, AFL-CIO, 746 F.2d 1503, 1507–08 (D.C. Cir. 1984); see also Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n AFL-CIO v. Liberty Mar. Corp., 330 F. Supp. 3d 451 (D.D.C. 2018) (rejecting characterization of good faith negotiation requirement as a substantive, rather than procedural, limitation on an otherwise arbitrable dispute).

  Centerra attempts to distinguish this authority by highlighting the placement of the deadline provisions within the CBA and the terminology the parties used to describe any untimely grievance.  Def.'s Opp'n at 10–11, 14–15.  The grievance and arbitration provisions are found in Article 6 of the CBA.  Section 1 of Article 6 defines "grievance," as "an alleged violation, misinterpretation, or misapplication of any provision of this Agreement."  CBA at 11.  Section 2 then begins:  "The number of days provided for the presentation and processing of grievances in each step of this grievance procedure shall establish the maximum time allowed for the presentation and processing of a grievance."  Id. at 11 [Article 6, Section 2].  It continues: "Any grievance shall be considered null and void if not filed and processed by the Union . . . in strict accordance with the time limitations of this Article."  Id.  Section 3 proceeds to describe the various steps of the process and establish the 10-day deadlines for advancing an unresolved grievance to the next step, as noted above.  Id. at 11–12 [Article 6, Section 3].  Finally, Section 4

outlines the arbitration procedures for grievances that advance to "Step 4." Id. at 13 [Article 6, Section 4]. Centerra argues that mentioning the deadlines in Section 2, apart from the step procedures, and indicating that any grievance presented outside the deadlines is "null and void," somehow reveals that the parties meant the deadlines to circumscribe "the substantive scope of the arbitration provision" and, therefore, that disputes over the deadlines must be resolved by the Court. Def.'s Opp'n at 8–9, 14–15.

This argument fails. The mention of time limits in separate sections of Article 6 of the CBA and the use of the phrase "null and void" are irrelevant to the analysis. Section 2 of Article 6 simply emphasizes the effect of missing a deadline: that presenting a grievance past "the maximum time allowed" will result in its nullification. In other words, no grievance is permitted to advance to the next step unless it is presented within the applicable time limits, which Section 3 goes on to establish. Regardless where it appears or how the parties termed its effect, this provision is naturally read as a "procedural precondition[] for the use of arbitration" going to "*when* the contractual duty to arbitrate arises." BG Grp., PLC, 572 U.S. at 35 (emphasis in original). It does not concern substantive arbitrability, which is implicated by questions like "'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause . . . applies to a particular type of controversy.'" Id. at 34 (quoting Howsam, 537 U.S. at 84). Those questions, which judges presumptively decide, are absent here.

Ultimately, then, Centerra has not offered evidence showing that the parties intended for a court to resolve disputes over application of the CBA's time limits for presenting grievances. It therefore has not overcome the presumptive allocation of decision-making authority between judges and arbitrators, which assigns resolution of procedural issues to the latter. The Court will,

accordingly, grant summary judgment for S.D.M. on its complaint to compel arbitration. A separate Order will follow.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>February 10, 2023</u>